USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/18/09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
WILLIAM HARPER, JR.,                :
                                    :
                    Plaintiff,      :
        v.                          :      05 Civ. 5534 (BSJ)
                                    :      Memorandum & Order
THE PORT AUTHORITY OF NEW YORK &    :
NEW JERSEY, P.O. CARLOS NAUT, LT.   :
JOHN SIMMS, LT. NIALL O'DOHERTY,    :
SGT. NARICE WEST, and P.O.s JOHN    :
and JANE DOE #1-10,                 :
                                    :
                    Defendants.     :
------------------------------------X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff William Harper, Jr. ("Plaintiff") commenced this action on June 13, 2005, alleging causes of action against the Port Authority of New York & New Jersey (the "Port Authority") and Port Authority Police Officers John and Jane Doe #1-10. Plaintiff later amended his Complaint to add claims against Police Officer Carlos Naut ("Naut"), Lieutenant John Simms ("Simms"), Lieutenant Niall O'Doherty ("O'Doherty"), and Sergeant Narice West ("West") (collectively "Defendants"). Before the Court is Defendants' Motion for Summary Judgment on all claims. For the reasons set forth below, Defendants' Motion is GRANTED with respect to Plaintiff's federal claims and Plaintiff's state claims for false arrest, malicious prosecution, and malicious abuse of process. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

1

BACKGROUND

This case arises out of the June 14, 2004 arrest of Plaintiff for criminal possession of marijuana in the second degree. (Miller Aff. Ex. B.)  On that date, Plaintiff arrived at JFK International Airport on a Delta Airlines flight from Madrid, Spain.  (Defs.' Rule 56.1 Stmt. ¶ 5; Pl.'s Rule 56.1 Stmt. ¶ 5.) While in Spain, Plaintiff had purchased a bottle of Albertson's Absinthe, which Plaintiff was carrying in his backpack when he landed at JFK.  (Defs.' Rule 56.1 Stmt. ¶ 6; Pl.'s Rule 56.1 Stmt. ¶ 6.)  As he was passing through customs, Plaintiff was selected by Customs Inspector A. Gonzalez for an examination. (Defs.' Rule 56.1 Stmt. ¶¶ 8, 9; Pl.'s Rule 56.1 Stmt. ¶¶ 8, 9.) Inspector Gonzalez discovered the bottle of absinthe and summoned supervising Customs and Border Protection ("CBP") Officer Darrell R. Ivey.  (Defs.' Rule 56.1 Stmt. ¶¶ 8, 10; Pl.'s Rule 56.1 Stmt. ¶¶ 8, 10.)  Inspector Gonzalez informed CBP Officer Ivey that absinthe contained THC, an active ingredient in marijuana; CBP Ivey then conducted a field test on the absinthe using test kit #9, which is used to detect marijuana and THC.  (Defs.' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.)  Plaintiff and Defendants dispute whether the liquid involved in the field test turned red or light orange; a substance containing THC would turn the liquid red.  (Defs.' Rule 56.1 Stmt. ¶ 12; Pl.'s Rule 56.1 Stmt. ¶ 12.)  Based upon the field test results, Plaintiff was

arrested by CBP Officer Ivey.  (Defs.' Rule 56.1 Stmt. ¶ 14; Pl.'s Rule 56.1 Stmt. ¶ 14.)

Federal prosecutors declined to prosecute Plaintiff for possession of marijuana because the quantity of the drug he allegedly possessed was too small to meet their standards. (Defs.' Rule 56.1 Stmt. ¶ 17; Pl.'s Rule 56.1 Stmt. ¶ 17.) Sergeant Narice West, a Port Authority employee, was then notified by a customs agent that an individual had been arrested for possession of a liquid substance that tested positive for THC.  (Defs.' Rule 56.1 Stmt. ¶¶ 2, 18; Pl.'s Rule 56.1 Stmt. ¶¶ 2, 18.)  Sergeant West requested that the Station House Officer contact the Queens District Attorney to find out if that office wanted to prosecute the individual.  (Defs.' Rule 56.1 Stmt. ¶ 19; Pl.'s Rule 56.1 Stmt. ¶ 19.)  The Queens District Attorney's Office determined that it would prosecute.  (Defs.' Rule 56.1 Stmt. ¶ 20; Pl.'s Rule 56.1 Stmt. ¶ 20.)  As a result, Sergeant West assigned Police Officer Naut — another Port Authority employee — to the case, and he took Plaintiff into Port Authority custody.  (Defs.' Rule 56.1 Stmt. ¶¶ 1, 22, 23; Pl.'s Rule 56.1 Stmt. ¶¶ 1, 22, 23.)  Lieutenant Niall O'Doherty, the tour commander at JFK airport, signed the criminal complaint report against Plaintiff as well as his on-line booking sheet.  (Defs.' Rule 56.1 Stmt. ¶¶ 3, 24; Pl.'s Rule 56.1 Stmt. ¶¶ 3, 24.) Lieutenant John Simms, who took over the midnight shift as tour

3

commander at JFK, signed the balance of Plaintiff's arrest paperwork.[1] (Defs.' Rule 56.1 Stmt. ¶¶ 4, 25; Pl.'s Rule 56.1 Stmt. ¶¶ 4, 25.) Plaintiff was brought before a judge on June 16, 2004 and released on bail. (Defs.' Rule 56.1 Stmt. ¶ 28; Pl.'s Rule 56.1 Stmt. ¶ 28.) On July 7, 2004 the District Attorney dropped the charges against Plaintiff because a subsequent laboratory report revealed that the absinthe had tested negative for drugs. (Defs.' Rule 56.1 Stmt. ¶ 29; Pl.'s Rule 56.1 Stmt. ¶ 29.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing

---

[1] Both Lieutenant O'Doherty and Lieutenant Simms were Port Authority employees. (See Second Am. Compl. ¶ 10; see also O'Doherty Dep. 23:7-15, 25:17-24, Oct. 30, 2006.)

4

law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

**DISCUSSION**

I. Plaintiff's False Arrest Claims

Defendants argue that they are entitled to summary judgment on Plaintiff's claims for false arrest under § 42 U.S.C. 1983 and New York State law because there was probable cause for Plaintiff's arrest. The Court agrees.

"Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). A claim under § 1983 for false arrest is "substantially the same as a claim for false arrest under New York law." Id. "The existence of probable cause to arrest . . . 'is a complete defense to an action for false

arrest,' . . . whether that action is brought under state law or under § 1983." Id. (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (alteration in original, internal quotation marks and citation omitted). "When making a probable cause determination, police officers are 'entitled to rely on the allegations of fellow police officers.'" Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)). In such a situation, "[t]he determination of probable cause does not turn on whether [the fellow agent's] observations were accurate, but on whether [the arresting agent] was reasonable in relying on those observations." Id. (quoting Bernard, 25 F.3d at 103) (alterations in original); see Beal v. City of New York, No. 92 Civ. 0718, 1994 U.S. Dist. LEXIS 5269, at *15 (S.D.N.Y. Apr. 15, 1994) (stating that "[a]n officer has probable cause to arrest if he received his information from some person who it seems reasonable to believe is telling the truth"); Rivera v. Granucci, No. N-87-480, 1993 WL 76202, at *5 (D. Conn. Mar. 12, 1993) (observing that "[a] law enforcement officer can make an

investigatory stop or an arrest based on the representations of other officers, without personal knowledge of the facts of the case").

Although the Second Circuit has not yet addressed whether a § 1983 plaintiff has the burden of proving a lack of probable cause or whether a defendant has the burden of proving its existence, in this case the Court finds that Plaintiff's claims fail regardless of which party has the burden of proof. Davis v. Rodriguez, 364 F.3d 424, 433 n.8 (2d Cir. 2004). There is no dispute that Plaintiff was subjected to a routine and legal search by Customs and Border Protection upon his entry into the United States. See Tabbaa v. Chertoff, 509 F.3d 89, 97-98 (2d Cir. 2007) (stating that "[i]t is well established that the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime"). During that search, he was found to be in possession of absinthe, a liquor on CBP's list of prohibited items. (See Ivey Dep. 16:8-19, June 16, 2006; Miller Aff. Ex. C; Weber Decl. Ex. B.) The liquor was tested for THC by Customs and Border Protection Officer Ivey. (Defs.' Rule 56.1 Stmt. ¶ 11; Pl.'s Rule 56.1 Stmt. ¶ 11.) Officer Ivey determined that the result of this test was positive. (Ivey Dep. 20:4-9; 39:14-40:6.) Officer Ivey was experienced in conducting this test, and, to his knowledge, the test had not yielded a

false positive before the date of Plaintiff's arrest.  (Defs.' Rule 56.1 Stmt. ¶ 13; Pl.'s Rule 56.1 Stmt. ¶ 13.)  The Port Authority police officers then relied on Officer Ivey's assessment that the test results were positive when they took Plaintiff into custody; there is no indication that Port Authority police independently tested the absinthe for the presence of THC.  (See Defs.' Rule 56.1 Stmt. ¶¶ 18-25; Pl.'s Rule 56.1 Stmt. ¶¶ 18-25; Naut Dep. 43:5-15, 61:10-13, 93:22-94:12, Oct. 27, 2006; West Dep. 31:14-32:10, Feb. 16, 2007.)  The record is also devoid of any indication that Defendants had any reason to disbelieve the representations of CBP that Plaintiff's absinthe had tested positive for THC or that the CBP officers who had detained Plaintiff were acting in bad faith.  Under these circumstances, regardless of whether the result of Officer Ivey's test for the presence of THC was, in fact, positive, Defendants were permitted to take Plaintiff into custody based on the representations of CBP officers that the liquid Plaintiff was carrying contained THC.[2]

Although Plaintiff argues that Defendants had an obligation to investigate further before arresting Plaintiff — by, for example, searching the internet to discover whether absinthe contains THC — such is not the case.  "Once officers possess facts sufficient to establish probable cause, they are neither

---

[2] In this action, Plaintiff has asserted claims only against Port Authority Police Officers and the Port Authority itself; Plaintiff has not asserted claims against Customs and Border Protection or any CBP officers.

required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). "[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta 460 F.3d at 395-96. Once Defendants were informed by CBP that Plaintiff had in his possession a liquid that had tested positive for THC, they had adequate probable cause to arrest Plaintiff and were under no obligation to investigate further. Although Plaintiff asserts that the fact that he made no attempt to conceal the bottle of absinthe as he passed through customs and that he had legally purchased the bottle in Spain should have caused Defendants to wonder whether absinthe did, in fact, contain THC, this argument is unavailing. The fact remains that Defendants were informed by CBP officers that Plaintiff's absinthe had tested positive for THC and were entitled to rely on that information.

Because the Court finds that Defendants had probable cause for Plaintiff's arrest, Plaintiff's claims for false arrest under § 42 U.S.C. 1983 and New York State law must fail. Accordingly, Defendants' request for summary judgment with respect to these claims is GRANTED.

## II. Plaintiff's Malicious Prosecution Claims

Plaintiff asserts claims for malicious prosecution both under 42 U.S.C. § 1983 and New York State law. Though § 1983 provides Plaintiff with a federal cause of action, the elements of the underlying malicious prosecution claim are borrowed from state law. Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004). In order to establish a claim for malicious prosecution in New York, a plaintiff must show: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). In the instant case, the only elements of the claim in dispute are probable cause and malice.

In the context of a malicious prosecution claim, probable cause has been described as "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). "Absent new countervailing facts, probable cause for arrest establishes probable cause for prosecution." Jackson v. Marshall, No. 04 Civ. 3915, 2008 WL 800745, at *3 (S.D.N.Y. Mar. 25, 2008); see Dukes v. City of New York, 879 F. Supp. 335, 342 (S.D.N.Y. 1995). In this case, the Court has already determined

that probable cause existed for Plaintiff's arrest.  On the same day as his arrest, the criminal complaint against Plaintiff was filed, initiating prosecution.  (Defs.' Rule 56.1 Stmt. ¶¶ 23, 24; Pl.'s Rule 56.1 Stmt. ¶¶ 23, 24; Miller Aff. Ex. B.) Although new facts pointing to Plaintiff's innocence were discovered after Plaintiff was arrested and charged — specifically, the discovery that Plaintiff's absinthe did not contain THC — the District Attorney dropped all charges against Plaintiff when those facts were discovered.  Thus, because probable cause existed to initiate proceedings against plaintiff, and those proceedings were discontinued when evidence exculpating Plaintiff came to light, Plaintiff's claims for malicious prosecution under federal and state law fail.  Accordingly, Defendants' request for summary judgment with respect to these claims is GRANTED.

### III. Plaintiff's Malicious Abuse of Process Claims

Plaintiff asserts claims for malicious abuse of process both under 42 U.S.C. § 1983 and New York State law.  As was the case for malicious prosecution, the elements of a malicious abuse of process claim are derived from state law.  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  In New York, a malicious abuse of process claim lies against a defendant who: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse

11

or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Id. "The crux of a malicious abuse of process claim is the collateral objective element." Douglas v. City of New York, No. 06 Civ. 6134, 2009 WL 260769, at *8 (S.D.N.Y. Feb. 5, 2009). To meet this element, "a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose — that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" Id. (quoting Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (alterations in original). In this case, Plaintiff's abuse of process claim fails because there is no evidence in the record that Defendants sought to achieve any "collateral purpose" by arresting Plaintiff and charging him with possession of marijuana. Indeed, Plaintiff has not even suggested to the Court what any alleged collateral purpose could possibly be. Thus, Plaintiff's claims for malicious abuse of process under state and federal law are without merit. Accordingly, Defendants' motion for summary judgment with respect to these claims is GRANTED.

### IV. Plaintiff's Monell Claim

Plaintiff additionally asserts a claim against the Port Authority pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), in which the United States Supreme Court

held that "a municipal entity may be liable under § 1983 if the alleged constitutional violation was caused by the entity's 'policy or custom.'" Douglas, 2009 WL at *11. In order to maintain a Monell claim a Plaintiff must demonstrate an underlying constitutional violation. Mitchell v. Prison Health Servs., Inc., No. 07 Civ. 8268, 2008 WL 5069075, at *6 (S.D.N.Y. Nov. 20, 2008). In this case, however, the Court has found that the Port Authority's actions did not violate Plaintiff's constitutional rights. Accordingly, Plaintiff's Monell claim fails and the Port Authority's Motion for Summary Judgment on the claim is GRANTED. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (holding that because the district court found no underlying constitutional violation, "its decision not to address the municipal defendants' liability under Monell was entirely correct").

## V. Plaintiff's Pendent State Law Claims

The Court declines to exercise supplemental jurisdiction over any of Plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's remaining state law claims are DISMISSED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED with respect to all of Plaintiff's federal claims as well as Plaintiff's state claims for false arrest, malicious prosecution, and malicious abuse of process. The Court declines to exercise supplemental jurisdiction over any of Plaintiff's remaining state law claims. Accordingly, Plaintiff's Complaint is DISMISSED in its entirety. Because no further issues remain to be decided in this action, the Clerk of the Court is directed to close the case.

**SO ORDERED:**

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:  New York, New York
        February 18, 2009